### N. C. HILBURN v. E. R. HARRIS ET AL.

#### No. 104.

**1. Common Source—Judgment of Partition not Subject to Attack.**—Where, in trespass to try title, both parties claim under a judgment in partition, the defendant is precluded by the rule of common source from attacking the validity of such judgment.

**2. Community Debt—Right of Surviving Wife to Convey Land.** Where a husband and wife verbally contract with their son to convey land and property to him in consideration of his agreement to take care of them during the remainder of their lives, the wife, after the husband's death, would have the right to convey land of the community estate in satisfaction of such obligation.

**3. New Trial — Newly Discovered Evidence.**—Where a party, in his application for new trial, brings himself within the established rules of law and the principles of adjudged cases, he is entitled to a new trial as a matter of right. See opinion for newly discovered evidence held material, and for diligence held sufficient to require the granting of a new trial.

**4. Law of Another State—Presumption.**—Where the record does not show that the law of another State in reference to community property is different from that of this State. it will be presumed to be the same.

##### ON REHEARING.

**5. Practice on Appeal — Rehearing — Certiorari.**—A motion for rehearing will not be granted to enable a party to bring up a more perfect record by certiorari. Following Ross v. McGowen, 58 Texas, 603.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Bell & Green*, for appellant.—1. Mary Williams, the surviving wife of Duke Williams, had the right, as survivor in community, to convey the land, the interest of Duke Williams therein being community property, in satisfaction of the obligation created by their contract with their son, Dr. J. J. Williams. Watkins v. Hall, 57 Texas, 2; Rudd v. Johnson, 60 Texas, 91; Carter v. Conner, 60 Texas, 52; Johnson v. Harrison, 48 Texas, 268; 1 Bates Law of Part., sec. 294.

2. A new trial will be granted a party upon the ground of newly dis-

covered evidence when it is made to appear that such evidence is material and on another trial would probably change the result of the suit, and that the evidence is not merely cumulative, and that such evidence could not have been discovered before by use of due diligence.    Edrington v. Kiger, 4 Texas, 95; Welch v. Nasboe, 8 Texas, 190; Gay v. McGuffin, 9 Texas, 503.

*Potter, Potter & Mathis,* for appellees.—The suit having been pending for nearly two years, and there having been no effort to get the evidence called "newly discovered," and the fact that parol proof was not admissible to show a parol gift of land where neither possession is taken thereunder nor improvements made nor consideration paid, rendered such evidence unavailing to obtain a new trial.    Traylor v. Townsend, 61 Texas, 144; Cochrane v. Middleton, 13 Texas, 275; Murphy v. Stell,. 43 Texas, 123.

HEAD, Associate Justice.—Sometime prior to 1843, Dr. G. W. Long died in this State, and administration was had upon his estate in Fort Bend County.    At the time of his death, Dr. Long left surviving him his wife and six whole brothers and sisters and four half-brothers and sisters, but no children.    He left a considerable estate, consisting of land and personal property, among which was his own headright certificate for 1280 acres of land.    One of his sisters of the whole blood was Mary Williams, wife of Duke Williams; one of his brothers of the whole blood was. Ed. M. Long; three of his brothers of the half-blood were N. T., W. H., and J. J. Macon.    Prior to the partition herein referred to, the four last named conveyed all their interest to Duke Williams, husband of Long's. sister Mary above named.

On June 1, 1853, one of the parties interested in the estate of Long filed a petition in the Probate Court of Fort Bend County for a partition of said estate, making Duke Williams, with several of the heirs, parties thereto, but did not join Mary Williams, Ed. M. Long, and the three Macons above named therein.    The nonresident heirs who were made parties were duly cited by publication.

On the 25th day of July, 1853, this original petition for partition was amended, making the heirs who had not been joined as above set forth parties to such proceeding, and dismissing as to Duke Williams.    It appears from this amendment that these new parties were nonresidents of this State.

At the July Term, 1853, a decree was entered ordering the partition of this estate, but it does not appear from the record that all the parties had been regularly cited to answer plaintiff's petition other than by a general recital in the judgment.

At the August Term, 1853, the commissioners appointed by the above

judgment made their report, which was confirmed; and by the partition so made, the 1280 acres certificate above referred to was given to Mary Williams, Edward M. Long, and the three Macons above named, so that by the terms of the decree, in connection with the transfers to Duke Williams above recited, the whole of this certificate became vested in Duke Williams and his wife, Mary. The land in controversy was afterwards located under contract with Duke Williams by virtue of this certificate:

In 1864 or 1865 Duke Williams died, leaving his wife, Mary Williams, and five sons and daughters surviving him. Appellees claim the interests of two of these children, and appellant the remainder; and the court below rendered judgment upon this basis in favor of appellees, from which this appeal is prosecuted. Appellant claims under deed made by Mary Williams, the surviving wife, to J. J. Williams and M. F. Kennedy, the last named being husband of one of the daughters.

Appellant's first assignment of error attacks the validity of the decree of partition above referred to, upon the ground that it affirmatively appears from the record that Mary Williams, Ed. M. Long, and the three Macons were nonresidents of this State, and had never been properly served with citation; but we are of opinion that inasmuch as this decree constitutes the common source of title of appellant and appellees, that its validity is not material in this case. Had appellant proposed to show that his interest would have been greater by disregarding this decree than by upholding it, he would not be precluded from so doing; but inasmuch as his interest, as well as appellees', in the land in controversy would be reduced by going back of the decree, we think he should be held to the common source. Burns v. Goff, 79 Texas, 236. It would therefore seem that appellant's and appellees' interest is the same, whether the decree be held valid or whether it be only held as evidence of a common source of title; and if this was the only cause of complaint the judgment of the court below should be affirmed.

Appellant, however, after the rendition of the judgment in the court below, made a motion for a new trial upon the ground of newly discovered evidence, which was overruled, and this action of the court is assigned as error. By this newly discovered evidence it is proposed to prove, that in their lifetime Duke and Mary Williams entered into a verbal contract with their son J. J. Williams to give him this land, with other property, in consideration of his agreement to take care of them during the remainder of their lives; and that after the death of Duke Williams, Mary Williams, his surviving wife, made the deed to J. J. Williams and M. F. Kennedy above referred to in pursuance of this contract. It seems that Duke and Mary Williams during this time resided in the State of Tennessee, but the record does not show that the law of Tennessee in reference to community property is different from that in this State,

and we must therefore presume it to be the same. Bradshaw v. Mayfield, 18 Texas, 21; Porcheler v. Bronson, 50 Texas, 555; Green v. Rugely, 23 Texas, 539; Abercrombie v. Stillman, 77 Texas, 592; Crosby v. Hus-ton, 1 Texas, 203; James v. James, 81 Texas, 381; Brown on Jur., sec. 31.

Appellees contend that this motion should have been overruled, be-cause it would tend only to show a verbal contract to convey land, which would be void under our statute of frauds; but we are of opinion, treat-ing the Tennessee law to be the same as our own, the survivor of the community would have the right to convey the community property in satisfaction of an obligation of this kind. Brewer v. Wall, 23 Texas, 585; Primm v. Barton, 18 Texas, 206; Long v. Walker, 47 Texas, 173; Gar-nett v. Jobe, 70 Texas, 696.

Even if it be conceded that Duke and Mary Williams could not have been compelled to comply with their verbal contract to convey this land, it would seem that upon their refusal so to do, Duke Williams would be liable upon a quantum meruit for the value of the services rendered thereunder (Sprague v. Haines, 68 Texas, 216); and as this would be a community debt, the right of the survivor to convey community prop-erty in satisfaction thereof would seem to be clear.

We are therefore of opinion that this alleged newly discovered evidence was material; and if negligence is not to be imputed to appellant for his failure to discover it in time for the trial, his motion for a new trial should have been granted to enable him to produce it. The fact that such evi--dence can be produced, is shown by an affidavit made by M. F. Kennedy and a letter from Thomas Duke Williams, a son of Mary and Duke Wil-liams, Sr.; and appellant's attorney makes affidavit, that he had been diligent in looking up evidence in the case; that he had written a number of letters to Kennedy and to Thomas D. Williams, but did not learn of the. facts stated in his motion as above set forth until after the trial, and from these affidavits it would seem that he had been reasonably diligent in the premises.

In speaking of this question, Chief Justice Wheeler, in Mitchell v. Bass, 26 Texas, 377, says: "Such motions are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and where the court has refused an application made upon this ground, the appellate court will not reverse, unless it shall appear that. the court below has not exercised its discretion according to the established rules of law. Yet, much as should be left to the discretion of the court, and reluctant as the appellate court may be to interfere with the exercise of that discretion, there are cases where the established rules of law and the principles of adjudged cases would be disregarded if a party was. denied a new trial upon newly discovered evidence. The party who brings. himself within the principles of such cases is entitled to a new trial as a matter of right, unless it be in those cases where it is apparent to the court.

that the justice of the case has been attained.    Where there can be any doubt of the justice of the verdict, to refuse a new trial, when the party has really discovered new evidence of a conclusive tendency, would be against justice and precedent; and by new evidence is meant proof of some new and material fact in the case, which has come to light since the trial."    And again:    " It is desirable that there should be an end of litigation with as little delay and expense as possible consistent with the great end of litigation—a correct decision of causes according to their real merits; but it should always be sought in subordination to the great end to be attained."    This language is quoted with approval in Wolf v. Mahan, 57 Texas, 175.    See, also, Railway v. Forsyth, 49 Texas, 171, and Railway v. Barron, 78 Texas, 421.

Taking the affidavits in this case to be true, we are of opinion that they show reasonable diligence on the part of appellant and his attorney; and presuming the law of Tennessee to be the same as in this State, we think the evidence material, and that a new trial should have been granted.

Let the judgment of the court below be reversed and the cause remanded for a new trial in accordance with this opinion.

*Reversed and remanded.*

Delivered February 23, 1893.

### ON REHEARING.

HEAD, ASSOCIATE JUSTICE.—Appellees' motion for a rehearing can not be granted to enable them to bring up a more perfect record by certiorari.    This question is fully considered on a motion for rehearing in the case of Ross v. McGowen, 58 Texas, 603, and the practice there indicated will be enforced by this court.    Looking at the record alone as presented to us to ascertain the facts upon which the court below acted in ruling upon the motion for a new trial on account of newly discovered evidence, we think the former disposition of the case by us was correct, and the motion for rehearing will therefore be overruled.

*Overruled.*

Delivered February 23, 1893.